```
                United States District Court
                  District of Massachusetts
```

| | |
|---|---|
| JAMES DICKEY,<br>     Plaintiff,<br><br>    v.<br><br>EDWARD KENNEDY,<br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)   07-11717-NMG<br>)<br>)<br>) |

## MEMORANDUM & ORDER

GORTON, J.

Pro se plaintiff James Dickey ("Dickey") brought suit against Edward Kennedy ("Kennedy") for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), based upon alleged extortion, attempted extortion and mail fraud and conspiracy to do the same. In June, 2010, this Court issued a Memorandum and Order allowing defendant's motion for summary judgment ("the June, 2010 M&O"). Dickey v. Kennedy, No. 07-cv-11717 (NMG), 2010 WL 2612587 (D. Mass. June 25, 2010). Before the Court is Dickey's motion to alter that judgment.

I. **Background**

The factual background is set out in more detail in the June, 2010 M&O but is summarized briefly here. Kennedy was an employee of the City of Boston's Inspectional Services Department ("ISD"). John Meaney ("Meaney") is a Health Inspector for ISD who also served as a Hearing Officer during condemnation

hearings. Jonathan Kaye ("Kaye") is the third actor in the alleged enterprise and, although his status is not clear, Dickey claims that he is a contractor from Rhode Island.

Dickey contends that Kennedy and others engaged in an unlawful scheme to "extort" real property from Boston property owners, including Dickey. To do so, Dickey alleges that Kennedy, in his official capacity, would condemn a building with the intention of forcing its owner to sell it to his associates at a low price. Meaney, acting as the ISD Hearing Officer, would then ensure that the condemnation was upheld. If the owner did not sell, Kennedy would allegedly

> 'feed' the building to an associate [i.e., Kaye or Meaney] for the purpose of extorting the building by purchasing [it] at a reduced rate.

In one instance, Dickey claims, Meaney was able to purchase a building for a low price and turn a quick profit. In other instances, Kennedy would have Kaye appointed as receiver for the building. Kaye would then allegedly record an excessive mortgage on the property and later foreclose once repairs were done. According to Dickey, the amount of the mortgage would, in effect, become the (reduced) purchase price because Kaye would submit exaggerated expenses for rehabilitating the property.

In support of his claim that such activity represented a pattern of racketeering activity, Dickey provided five examples of wrongdoing with respect to five properties, two of which he

owned.

This Court allowed Kennedy's motion for summary judgment because Dickey failed to allege a valid claim of racketeering activity. With respect to extortion, it found that Dickey's alleged scheme did not establish any consent on the part of the victims and thus could not support a claim of extortion under the Hobbs Act. It also concluded that lack of consent was "not the only problem with Dickey's claim and his allegations rest[ed] on a shaky factual foundation built upon frequent speculation". With respect to mail fraud, the Court found that 1) Dickey failed to identify any intentional material falsehood and 2) it was unconvinced that the specified letters were mailings caused by Dickey.

In July, 2010, Dickey filed a motion to alter that judgment pursuant to Fed. R. Civ. P. 59(e) which Kennedy has opposed.

## II. Analysis

Pursuant to Fed. R. Civ. P. 59(e), a motion to reconsider may be granted "only where the movant shows a manifest error of law or newly discovered evidence". Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007). The provision

> does not allow the losing party to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier.

Nat'l Metal Finishing Co. v. Barclays American/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (citation omitted).

The Court will, however, apply that standard intermittently because the parties' briefs did not necessarily address, in full or in part, all of the findings made in the June, 2010 M&O. In light of that fact and plaintiff's pro se status, the Court will consider his arguments untethered from the typically harsh standards of Rule 59(e) where appropriate.

### A. Extortion

Dickey contends that this Court mistakenly held that the alleged extortion occurred without the victims' consent. He acknowledges that "[c]learly the 'general scheme' to extort real property ultimately requires the consent of the owner" but argues that such consent was evident here in one of two ways, either 1) the property owner "consensually sells the building at a consented reduced rate, due to condemnation" or 2) if the owner refuses to consent to sell and the building is placed into receivership, the consent of the owner occurs when he

> yields to the authority of the receiver (obtained through the Boston Housing Court), and the owner, directly or from the proceeds of the owner's foreclosed property, consensually pays the receiver's exaggerated/fraudulent expenses.

Dickey elaborates that closer examination of the facts by this Court would have revealed that Kennedy extorted property from "at least three victims" with their consent. With respect to 27 G Street, he states that he submitted the deed demonstrating that the property was sold to Meaney and two others

for $260,000. With respect to 20 Claybourne Street, Dickey asserts that he submitted Kaye's final report to the Housing Court as receiver indicating the cost of repairs and the deed transferring the property to Kaye. He maintains that those documents

> clearly indicate that the owner of 20 Claybourne Street 'consented' to the Defendant's extortion demands by submitting to the authority of the receiver/Boston Housing Court, who transferred the property to Jonathan Kaye, an associate of the Defendant.

Kennedy responds that Dickey has presented no new evidence to support his claim of extortion. The deed for 27 G Street provides no indication that Kennedy had any connection to the property and his argument is, therefore, another example of a bald assertion without factual support. With respect to 20 Claybourne Street, Kennedy contends that, because it was placed into receivership and sold as a result, the owner of the property "undoubtedly" did not consent to the sale which was done by order of the Housing Court not the owner's volition.

The Court finds that Dickey's motion cannot resurrect his extortion claims. First, there is no persuasive reason in his memorandum to reconsider the Court's prior holding with respect to consent. Notably, Dickey contracts his prior claim by now maintaining that extortion occurred with the owner's consent for "at least three victims". He apparently no longer alleges extortion with respect to properties he owns.

In any event, even reducing the claim to three alleged victims, Dickey's motion still is unavailing. He refers to two buildings in his memorandum in an attempt to demonstrate consent but neither supports his arguments. With respect to 27 G Street, the record is devoid of any evidence to support his allegations. He provides the deed of sale to Meaney but, as stated in the June, 2010 M&O, has submitted no evidence that the building was condemned. From the deed alone, therefore, Dickey would have this Court infer that Kennedy was somehow involved with the property, that it was condemned and that, as a result of that condemnation, the owners were coerced into selling it to Meaney at a reduced rate. The Court declines Dickey's invitation to engage in such convoluted speculation.

Nor do Kaye's final report as receiver and the deed for 20 Claybourne Street indicate that the owners of that property consented to Kennedy's demands by submitting to the authority of the receiver and the Housing Court. Neither document mentions the owners and the deed merely transfers the property from Kaye as receiver to Kaye in his individual capacity. As the Court previously found, there is no indication that the owner responded to the original condemnation (or otherwise participated in the process) and Dickey provides no evidence to alter that conclusion here. Accordingly, he cannot make out a claim for extortion under the Hobbs Act.

The Court also notes that, while consent was the focus of the June, 2010 M&O (and the instant motion), the Court also held that it "is not the only problem with Dickey's claim and his allegations rest on a shaky factual foundation built upon frequent speculation". The Court remains unpersuaded that Dickey's claims are meritorious for those reasons as well.

### B.  Mail Fraud

In the June, 2010 M&O, the Court stated that

> the only allegations regarding mail fraud pertain to two properties, 20 Claybourne Street and 97 Mount Ida Road, and Dickey specifically identifies only three allegedly fraudulent letters.

In his motion to alter judgment, Dickey now attempts to add more specifics to his allegations about mail fraud. He maintains that the alleged falsehoods were "numerous" and include 1) the fact that Kennedy withheld the address of the owner of 199 Athens in order to have Kaye appointed as receiver, 2) the allegedly false information about the condition of his Mount Ida Road property and 3) false expenses submitted by Kaye to the Boston Housing Court for repairs of 199 Athens Street and 20 Claybourne Street.

The Court will not elaborate on its prior consideration of what allegations purportedly constituted mail fraud. The first alleged falsehood identified by Dickey relates to a letter mailed to (not from) Kennedy. The second was the focus of his arguments in his original opposition to the summary judgment motion and thus has already been considered in detail. The third indicates

that it was mailed to counsel at the Massachusetts Attorney General's office but is not new evidence and, instead, could and should have been identified in connection with the mail fraud claim previously. See Nat'l Metal Finishing Co., 899 F.2d at 123; Aybar v. Crispín-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (citations omitted).

Dickey also contests the Court's reasons for finding no valid claim of mail fraud. First, he contends that it "cannot be disputed" that Kennedy caused certain mailings because he requested that a receiver be appointed and, shortly thereafter, his future wife mailed letters to the Attorney General's office. That same argument was, however, considered before and thus is not grounds for reconsideration.

Second, Dickey argues that an alleged false statement about the condition of his Mount Ida Road property was material because it was contained in a letter requesting that the property be placed into receivership due to its poor condition. In response to the Court's assertion that it was one of many statements in the ISD report, Dickey contends that the Court actually found that the statement is irrelevant rather than immaterial because the recipient need not rely on it. He then asserts that reliance is not an element of mail fraud and thus the Court was mistaken.

Dickey has failed to elicit any new evidence or point out an error of law sufficient to alter the prior judgment with respect

to mail fraud. The Court confirms its finding that the allegedly false statement about the condition of 97 Mount Ida Road (i.e., "[f]ront and rear common halls missing, broken not working (repair/replace)") was not an intentional material falsehood. Dickey's argument that this Court was in error when it mistook reliance for materiality is unpersuasive. A statement is immaterial if it is incapable of influencing the intended victim and the Court concludes that the nonsensical statement about the hallways (a likely typographical error) is exactly that.

In short, Dickey attempts to improve his mail fraud claim in his most recent pleading. That is not a valid reason for reconsideration pursuant to Fed. R. Civ. P. 59(e) and, in any event, his arguments fall short again.

### ORDER

In accordance with the foregoing, plaintiff's motion to alter judgment (Docket No. 39) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 20, 2010